UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X

Danone Asia Pte. Ltd. and
Amoy Food, Ltd.,

                              Plaintiffs,        CV-05-1611 (CPS)

    - against -                                  MEMORANDUM OPINION
                                                 AND ORDER
Happy Dragon Wholesale, Inc. and
Jimmy Wang,

                              Defendants.

------------------------------------X

SIFTON, Senior Judge.


    Plaintiffs Danone Asia Pte. Ltd. ("Danone") and Amoy Food

Ltd. ("Amoy Food") bring this trademark action against defendants

Happy Dragon Wholesale, Inc. ("Happy Dragon") and Jimmy Wang

("Wang"). Specifically, plaintiffs allege the following claims

against the defendants: (1) infringement of plaintiffs'

registered trademarks in violation of Section 32 of the Lanham

Act, 15 U.S.C. § 1114 (Count I); (2) counterfeiting of

plaintiffs' registered trademarks in violation of Section 34(d)

of the Lanham Act, 15 U.S.C. § 1116(d)(Count II); (3) false

designation of origin in violation of Section 43(a) of the Lanham

Act, 15 U.S.C. § 1125(a)(Count III); (4) trademark infringement

and unfair competition under common law (Count IV); (5) dilution

of the distinctive quality of plaintiffs' marks under Section

43(c) of the Lanham Act, 15 U.S.C. § 1125(c)(Count V); and (6)

dilution under New York state law. Plaintiffs' claims arise out

of defendants' sale of counterfeit soy sauce bearing trademarks
that are unauthorized copies of plaintiffs' trademarks.

Plaintiffs move for partial summary judgment[1] pursuant to
Rule 56 of the Federal Rules of Civil Procedure. For the reasons
set forth below, the motion for summary judgment is granted in
part and denied in part.

**BACKGROUND**

The following facts are taken from the parties' depositions,
affidavits, and exhibits and plaintiff's Local Rule 56.1
statement of undisputed facts.[2]

Plaintiff Amoy Food is a Hong Kong-based corporation engaged
in the production, advertising, promotion and sale of Asian food
products, including soy sauce products. Plaintiff Danone, a
Singapore-based company, is the parent company of plaintiff Amoy
Food. Defendant Happy Dragon is a corporation organized under the
laws of New York, with a place of business in Flushing, New York.
Happy Dragon is engaged in the distribution of food products to
the restaurant trade. Defendant Jimmy Wang is the president of
Happy Dragon and its sole owner and officer.

Amoy Food has used the mark "AMOY" on soy sauce products in
the United States since 1954. Danone registered this mark with

_____

[1]Plaintiffs do not move for summary judgment on the dilution claims.
They have, however, undertaken to discontinue those claims if they prevail on
this motion.

[2] Defendants have failed to submit a Rule 56.1 statement.

the United States Patent and Trademark Office ("PTO"),
Registration Nos. 1,095,359, 2,178,809, and 2,715,913
(collectively, the "AMOY MARKS"), for several goods, including
soy sauce products. Amoy Food has used the mark "GOLD LABEL SOY
SAUCE" on soy sauce products in the United States since 1983.
Danone has registered this mark with the PTO, Registration No.
3,002,623, for soy sauce products.

Amoy Food sells a version of its GOLD LABEL SOY SAUCE
products in 63-ounce metal containers primarily to the restaurant
trade. This container, sold only in the United States, has a
unique trade dress (hereinafter "Amoy Food Metal Container").
This "trade dress" consists of the following characteristics: (1)
AMOY trademark; (2) the GOLD LABEL SOY SAUCE trademark in both
English and Chinese characters; (3) orange color lettering for
AMOY and GOLD LABEL SOY SAUCE marks; (4) black color for the
generic product information; (5) yellow background color. Amoy
Food also sells these containers in a corrugated package that
holds six cans. The corrugated packaging also bears a unique
trade dress (hereinafter "Amoy Food Six-Pack"). The trade dress
consists of the following elements: (1) the AMOY trademark, and
the GOLD LABEL SOY SAUCE trademark in both English and Chinese
characters; (2) a five digit alphanumeric code, printed in a
"dot-matrix" format, which identifies that date when the products
were packaged. The AMOY MARKS, the GOLD LABEL SOY SAUCE MARK, the

Amoy Food Metal Container, and the Amoy Food Six-Pack are collectively referred to as the "AMOY FOOD MARKS." The corrugated packaging that plaintiffs have used in the Washington, D.C. - Boston corridor for the last few years contains five cans of soy sauce and one can of oyster sauce (the "'5 + 1' package"). The product information on this package appears in green.

In the United States, Amoy Foods sells these products to its exclusive importer, Mon Chong Loong Trading Corp. ("Mon Chong"). In the last five years, Amoy Foods sold approximately $30 million worth of soy sauce products bearing the AMOY MARKS and the GOLD LABEL SOY SAUCE mark in the United States, and spent approximately $600,000 on advertising and promotional efforts in the United States.

Defendant Happy Dragon sells vegetables, canned foods, seafood, and dry goods to restaurants. Happy Dragon has approximately 15 employees and sales of more than $1 million annually.

Happy Dragon purchases products for resale, normally by check. Defendant Wang testified that prior to the transactions at issue in this litigation, Happy Dragon never gave cash to the driver delivering products from its sellers out of fear that the driver would steal the cash.

Happy Dragon has been selling plaintiffs' GOLD LABEL SOY SAUCE products since 1995. Until 2005, Happy Dragon regularly

purchased approximately 80 cases per month from two authorized distributors. For a few years before 2005, Happy Dragon bought and resold the "5 + 1" package, in place of the six pack.

On February 26, 2005, defendants purchased soy sauce products bearing marks that were counterfeit copies of plaintiffs' AMOY MARKS and GOLD LABEL SOY SAUCE mark (the "counterfeit containers") from a man who identified himself as "Mr. Chan." Wang testified that before that date, he had never met or spoken with Mr. Chan. Wang asked Mr. Chan for his telephone number, but he refused to provide it. Wang also asked him for the name of his company, but he similarly refused to provide it. Wang did not ask Mr. Chan for the location of Mr. Chan's business, its nature, or the source of the products. Happy Dragon purchased 467 cases of the counterfeit soy sauce product, and Wang testified that it would have purchased more had it been available. Happy Dragon offered to purchase the product with a check, but Mr. Chan insisted on cash. Accordingly, Wang paid Mr. Chan $11,441.50 in cash in exchange for the products.

The counterfeit containers were packed in a corrugated container with black printing. Prior to this purchase, Wang testified that he had not seen a six pack with black printing, as opposed to the "5 + 1" package with green printing, for at least the previous two to three years.

On March 12, 2005, Mr. Chan returned to Happy Dragon, and

defendants again purchased all of his inventory. They purchased
173 cases, for which they paid Mr. Chan $4,238.50 in cash, and
Wang testified that they would have purchased more had it been
available.

Wang testified that before defendants began selling the
counterfeit containers, they made a profit of $1 per case;
afterwards, they made a profit of $5 per case.

In 2004, Amoy Food's authorized importer, Mon Chong, was
alerted to the availability of "supposed" Amoy Food soy sauce
products in the 63-ounce container size at lower prices than
those for authorized Amoy Food products. Amoy Food assumed that
these complaints resulted from an isolated situation of an
authorized Amoy Food wholesaler having significantly discounted
its prices. However, in February 2005, Mon Chong again received
the same complaints.

On two separate occasions, Mon Chong's employees purchased
from Happy Dragon purported GOLD LABEL SOY SAUCE containers.
Happy Dragon also sold the product to an investigator that
plaintiffs had retained.

The soy sauce products sold by defendant Happy Dragon bear a
trademark and trade dress which contain features of the Amoy Food
Metal Container: the AMOY MARKS and the GOLD LABEL SOY SAUCE
marks, orange and black lettering, and a background yellow color.
The defendant also uses the six-pack packaging which has the

following distinctive features that appear on the Amoy Food Six

Pack: the AMOY MARKS and GOLD LABEL SOY SAUCE mark, the legend

"MANUFACTURED BY: AMOY FOOD, LTD.," and a 5-digit dot matrix

alphanumeric code. There are differences between the products,

which would not be easily recognizable to a customer, such as

small differences in lettering and punctuation in the words

"Percent Daily Values" and the address on the back of the metal

containers.

Defendant Happy Dragon is using the AMOY MARKS without

plaintiffs' authorization or consent. In the six month period

prior to the commencement of this action, sales of Amoy's GOLD

LABEL SOY SAUCE products by Mon Chong decreased as compared with

the same six-month period in the previous year. In contrast, Mon

Chong's sales of the product in preceding years showed steady

increases in sales.

Further, plaintiffs allege that the defendants' sale of the

counterfeit product has resulted in a loss of credibility among

Amoy Food's customers, because the customers have mistakenly

concluded that Amoy Food has established a separate line of

lower-priced distribution to the detriment of its long-standing

customers.

On March 29, 2005, in accordance with an Order to Show

Cause, plaintiffs served upon defendants a deposition notice and

request for documents for April 4, 2005. On April 4, Happy Dragon

neither appeared nor produced any documents. This Court subsequently issued an order pursuant to Federal Rule of Civil Procedure 37(a) requiring Happy Dragon to appear for a deposition on April 8, 2005. Happy Dragon again failed to appear or produce any documents.

Also on April 8, this Court ordered Happy Dragon to cease and desist from further sale of the counterfeit soy sauce products. Notwithstanding their receipt of the preliminary injunction order on April 12, defendants continued selling the counterfeit products. This Court subsequently granted plaintiffs' request for an order allowing plaintiffs, with the assistance of the Marshals Service, to seize any counterfeit soy sauce remaining in Happy Dragon's possession, and on April 18, 2005, the Marshals Service seized more than 3,000 cans of counterfeit soy sauce from Happy Dragon.

Plaintiffs were subsequently able to depose Wang and gather documents from defendants.

## DISCUSSION

### Jurisdiction

The Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338, which confers jurisdiction over actions involving violations of patents and trademarks, 28 U.S.C. § 1331, which authorizes jurisdiction over civil actions arising under federal law, and principles of pendent jurisdiction

over the state law claims.

## Motion for Partial Summary Judgment

### Summary Judgment Standard

A motion for summary judgment may be granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp v. Catrett,* 477 U.S. 317 (1986). A motion for summary judgment may be defeated by the non-moving party if that party produces sufficient specific facts to establish that there is a material issue of fact for trial. *See Montana v. First Federal Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir.1989). The role of the court on such a motion is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Knight v. United States Fire Ins. Co.,* 804 F.2d 6, 11 (2d Cir.1986). The "court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. V. American Piles, Inc.,* 138 F.3d 81, 87 (2d Cir.1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### Defendants' Failure to Respond to Plaintiffs' Rule 56.1 Statement

Local Rule 56.1 of the Eastern and Southern Districts of New

York requires that all summary judgment motions be accompanied by a "short or concise statement of material facts as to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1(a). The rule also requires that the party opposing summary judgment file a response setting forth the material facts about which it contends there exists a triable issue. Because defendants have failed to file any response, all facts contained in plaintiffs' Rule 56.1 statement are deemed admitted. *See* Local Rule 56.1(b) and (d). However, the moving party must "nevertheless offer facts supporting its Rule 56.1 Statement...." *Smith v. Principi,* 2004 WL 1857582, at *1, n.1 (S.D.N.Y. 2004).[3]

---

[3] Although defendants have not submitted a responsive Rule 56.1 statement, defendants, in their Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment argue that plaintiffs base many of their factual assertions in the inadmissible affidavits of Bertrand Austruy and John Lao. In support of their argument, they cite *Union Ins. Soc. of Canton, Ltd. v. William Gluckin & Co.*, 353 F.2d 946 (2d Cir.1965). They argue first that Austruy is General Counsel to Danone and therefore has no relationship to Amoy Foods. However, as stated above, Danone is the parent company of Amoy Foods. Moreover, although Austruy is General Counsel of Danone, he is not the litigating attorney, as was the case in *Union Ins. Soc. of Canton*. Austruy, as an officer of Danone includes statements in his affidavits from personal knowledge and from review of the company's records, both of which are admissible. See, e.g., Searles v. First Fortis Life Ins. Co., 98 F.Supp.2d 456, 461 (S.D.N.Y.2000) (stating, "[a]n affiant's conclusions based on personal observations over time...may constitute personal knowledge, and an affiant may testify as to the contents of records [he] reviewed in [his] official capacity."). Similarly, Lao, regional sales manager for Amoy Foods is competent to testify as to issues such as Amoy Food's sales, products, and packaging. Finally, defendants argue that the portions of the affidavits relating to a lab analysis of the counterfeit soy sauce should be stricken, since no additional evidence as to the lab analysis was provided. I need not decide on this argument because for the purposes of this motion, the chemical composition of the contents of the cans is irrelevant.

<u>Plaintiffs' Motion for Partial Summary Judgment</u>

Plaintiffs seek partial summary judgment against defendants on their First, Second, Third and Fourth Claims for relief, which allege (1) infringement of plaintiffs' registered trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114 (Count I); (2) counterfeiting of plaintiffs' registered trademarks in violation of Section 34(d) of the Lanham Act, 15 U.S.C. § 1116(d)(Count II); (3) false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(Count III); (4) trademark infringement and unfair competition under common law (Count IV). Plaintiffs also seek permanent injunctive relief, damages, and recovery of attorney fees.

*Counts I, II, and IV*

Section 32 of the Act prohibits the use in commerce, without consent, of any "reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods," in a way that is likely to cause confusion with plaintiff's registered trademarks. 15 U.S.C. § 1114 (1)(a). Section 43(a) prohibits similar conduct, though it is not limited to registered trademarks, and deems liable for false designation of origin "[a]ny person who...uses in commerce any container for goods...name, symbol, device...or any false designation of origin

..which is likely to cause confusion." 15 U.S.C. § 1125(a); *see also Chambers v. Time Warner, Inc.,* 282 F.3d 147, 155 (2d Cir.2002). Liability is established under both Sections 32 and 43(a) of the Lanham Act if a plaintiff can demonstrate (1) that it has a valid trademark entitled to protection under the Act, and (2) defendant's actions are "likely to cause confusion." *Arrow Fastener v. Stanley Works,* 59 F.3d 384, 390 (2d Cir.1995).

In this case, plaintiff's certificates of registration with the U.S. PTO for the AMOY MARKS and GOLD LABEL SOY SAUCE mark are "prima facie evidence that the mark[s] [are] registered and valid (i.e. protectible), that the registrant owns the mark[s], and that the registrant has the exclusive right to use the mark[s] in commerce." *Lane Capital Management, Inc. v. Lane Capital Management, Inc.,* 192 F.3d 337, 345 (2d Cir. 1999); 15 U.S.C. § 1067(b)("A certificate of registration of a mark...shall be prima facie evidence of the validity of the registered mark"). Thus, the plaintiff has established that its marks are valid and entitled to protection under the Act.

In considering the likelihood of confusion, district courts generally apply eight nonexclusive factors, known as the *Polaroid* factors:

> (1) the strength of the plaintiff's mark; (2) the similarity of plaintiff's and defendant's marks; (3) the competitive proximity of their products; (4) the likelihood that plaintiff will "bridge the gap" and offer a product like defendant's; (5) actual confusion between products; (6) defendant's good faith; (7) the quality of defendant's

product as compared to plaintiff's; and (8) the sophistication of the purchasers.

*Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 742-43 (2d Cir.1998)(citing *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir.1961). However, in cases involving counterfeit marks, "the Court need not undertake a factor-by-factor analysis under *Polaroid* because counterfeits, by their very nature, cause confusion." *Gucci America, Inc. v. Duty Free Apparel, Ltd.,* 286 F.Supp.2d 284, 287 (S.D.N.Y. 2003); *Phillip Morris USA Inc. v. Felizardo,* 2004 WL 1375277, at *5 (S.D.N.Y. 2004). Thus, the Court "need only determine the more fundamental question of whether there are items to be confused in the first place--that is, whether the items at issue here are, in fact, counterfeit, and whether Defendants sold those items." *Gucci America, Inc.*, 286 F.Supp.2d at 287. In this case, it is uncontroverted that the items at issue are counterfeit Amoy Foods soy sauce containers, and that defendant Wang sold and distributed these items.[4] Accordingly, defendant Wang's actions caused a likelihood of

---

[4] Although Wang denies that he had knowledge at the time he purchased them that the products were counterfeit, he does not now deny that the products were indeed counterfeit. Nevertheless, in his affirmation in support of the motion for summary judgment, defendants' attorney, Allen Wu, states, "there are material issues of fact concerning wither or not...the marks on the containers purchased by the Defendants are counterfeit....The differences in the alleged authentic package and those in possession of the Defendants is *de minimus* at best." However, as stated above, defendants have failed to respond to plaintiffs' Rule 56.1 statement of facts and, as such, the facts listed therein are deemed uncontroverted. Moreover, defendants fail to provide any evidence--testimonial or otherwise--to support Wu's assertion that the containers may not have been counterfeit, and Wu, as defendant's litigating attorney, does not purport to have personal knowledge of the events at issue.

consumer confusion, and plaintiff has established liability under Sections 32 and 43(a) of the Lanham Act. *See Phillip Morris Inc. v. Felizardo,* 2004 WL at *5. Accordingly, plaintiffs' motion for summary judgment as to Counts I and III of the complaint is granted.

The analysis for Count IV of plaintiffs' complaint, trademark infringement and unfair competition under common law, is subsumed within the analysis of the Lanham Act claims; therefore, plaintiffs motion for summary judgment on this claim is also granted. *See, e.g., Bi-Rite Enterprises, Inc. v. Button Master*, 555 F.Supp. 1188, 1193 (D.C.N.Y.1983) (*citing American Footwear Corp. v. General Footwear Co.*, 609 F.2d 655, 664 (2d Cir.1979), *cert. denied*, 445 U.S. 951 (1980); *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1201 (9th Cir.1979); *Damn I'm Good, Inc. v. Sakowitz, Inc.*, 514 F.Supp. 1357, 1360 (S.D.N.Y.1981); 15 U.S.C. §§ 1063 et seq. (1976); *International Society for Krishna Consciousness, Inc. v. Stadium Authority*, 479 F.Supp. 792, 798 (W.D.Pa.1979); *National Lampoon, Inc. v. American Broadcasting Co.*, 376 F.Supp. 733, 747 (S.D.N.Y.1974); *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*, 42 N.Y.2d 538, 542, 369 N.E.2d 1162, 1164, 399 N.Y.S.2d 628, 630 (1977)).

## Count II

Plaintiffs also allege that "defendants have committed acts

of counterfeiting in violation of Section 34(d) of the Lanham Act." However, this Court notes, *sua sponte*, that Section 34(d) of the Lanham Act does not create a separate cause of action for trademark violations. Instead, Section 34(d) provides that:

> In the case of a civil action arising under section 1114(1)(a) of this title...with respect to a violation that consists of using a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services, the court may, upon ex parte application, grant an order under subsection (a) of this section pursuant to this subsection providing for the seizure of goods and counterfeit marks involved in such violation and the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in such violation.

15 U.S.C. § 1116(d)(1)(A). Plaintiffs are not currently seeking a seizure order, having already been issued such an order. Instead, plaintiffs move for summary judgment on their claim that defendants have engaged in counterfeiting *in violation of* 15 U.S.C. § 1116(d). Presumably, plaintiffs seek a finding that defendants have engaged in counterfeiting *as defined by* Section § 1116(d)[5] for the purposes of being awarded damages pursuant to 15 U.S.C. § 1117.[6]

---

[5] 15 U.S.C. § 1116(d)(1)(B) provides that "the term 'counterfeit mark' means...a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered...."

[6] 15 U.S.C. § 1117(b) provides: "In assessing damages under subsection (a) of this section, the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee, in the case of any violation of section 1114(1)(a) of this title...that consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 1116(d) of this title), in

Because no independent cause of action under § 1116(d) exists, plaintiffs' motion for summary judgment as to this claim must be denied, and the claim must be dismissed. Plaintiffs' arguments appearing in this section of their Memorandum of Law and defendants' corresponding arguments are discussed in the "Damages" section below.

*Injunctive Relief*

Plaintiffs seek to permanently enjoin defendants from future infringement of their marks.[7] Section 34(a) of the Lanham Act provides courts with the "power to grant injunctions according to the principles of equity and upon such terms as the Court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. § 1116(a). To obtain a permanent injunction, plaintiff must demonstrate (1) actual success on the merits and (2) irreparable harm. *See e.g., Gucci America, Inc.,*

---

connection with the sale, offering for sale, or distribution of goods or services."

15 U.S.C. § 1117(c) provides: "In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services...."

[7] Specifically, plaintiffs seek to permanently enjoin defendants from "manufacturing, importing, buying, promoting, advertising and selling any products bearing the AMOY MARKS, the GOLD LABEL SOY SAUCE mark, the Amoy Food Metal Container or the Amoy Food Six-Pack, or any other mark confusingly similar to any one of them, or impliedly or expressly representing that any of the products manufactured or sold by defendants are genuine products sourced with plaintiffs."

286 F.Supp.2d at 290; *Wojnarowicz v. American Family Ass'n,* 745
F.Supp. 130, 148, n.13 (S.D.N.Y. 1990). As previously discussed,
plaintiff has established success on the merits on its Lanham
Act claims. Moreover, in this Circuit, "proof of a likelihood of
confusion establishes both likelihood of success on the merits
and irreparable harm." *Brennan's Inc. v. Bennan's Rest.,* 360
F.3d 125, 29 (2d Cir.2004); *Genesee Brewing Co., Inc. v. Stroh
Brewing Co.,* 124 F.3d 137, 142 (2d Cir.1997). Accordingly,
plaintiff is entitled to a permanent injunction. *See e.g.,
Phillip Morris v. Felizardo,* 2004 WL at *7; *Gucci America, Inc.,*
286 F.Supp.2d at 290.

### *Damages*

Plaintiff seeks an award of $2,000,000 in statutory
damages pursuant to 15 U.S.C. §§ 1117(b), and (c).

Section 35(b) of the Lanham Act provides that:

> In assessing damages...the court shall, unless the court
> finds extenuating circumstances, enter judgment for
> three times such profits or damages, whichever is
> greater, together with a reasonable attorney's fee, in
> the case of any violation of section 1114(1)(a) of this
> title...that consists of intentionally using a mark or
> designation, knowing such mark or designation is a
> counterfeit mark (as defined in section 1116(d) of this
> title), in connection with the sale, offering for sale,
> or distribution of goods or services.

15 U.S.C. § 1117(c). Section 35(c) of the Lanham Act provides
that:

> In a case involving the use of a counterfeit mark (as
> defined in section 1116(d) of this title) in connection

with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services....

15 U.S.C. § 1117(c). Congress added the statutory damages provision of the Lanham Act in 1995 because "counterfeiters' records are frequently nonexistent...making proving actual damages in these cases extremely difficult, if not impossible." *See Gucci America, Inc.,* 315 F.Supp.2d at 520. A plaintiff may recover "not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold..." 15 U.S.C. § 1117 (c)(1). If the Court finds that "the use of the counterfeit mark was willful," then the plaintiff may recover "not more than $1,000,000 per counterfeit mark..." *Id.* at 1117(c)(2). "The standard for willfulness is whether the defendant had knowledge that [his] conduct represented infringement or perhaps recklessly disregarded the possibility." *Kepner Tregoe, Inc. v. Vroom,* 186 F.3d 283, 299 (2d Cir. 1999). Plaintiffs, arguing that defendants' use of the counterfeit marks was willful, seek the maximum statutory award of $1,000,000 for each of the AMOY MARKS[8] and GOLD LABEL SOY SAUCE marks, for a total of $2,000,000.

---

[8] Although plaintiffs own three registrations for the AMOY mark, defendants' products incorporate a counterfeit copy of only one of them.

A plaintiff must substantiate a claim with evidence to prove the extent of damages. Although an evidentiary hearing may be held, "it is not necessary for the district court to hold a hearing, as long as...there was a basis for the damages specified...." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir.1997); *Tamarin v, Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir.1993)(district judges are given much discretion to determine whether an inquest need be held).

District courts have wide discretion in awarding statutory damages. *See Cable/Home Communication Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir.1990). Although Section 1117(c) "does not provide guidelines for courts to use" in determining an appropriate statutory damage award, "many courts have found guidance in the caselaw of an analogous provision of the Copyright Act, 17 U.S.C. § 504(c), which also provides for statutory damages for willful infringement." *Gucci America*, 315 F.Supp.2d at 520; *Sara Lee Corp. v. Bags of New York, Inc.*, 36 F.Supp.2d 161, 165-67 (S.D.N.Y.1999); *Rodgers v. Anderson*, 2005 WL 950021, at *2 (S.D.N.Y.2005). Under the Copyright Act, courts look to factors such as: (1) "the expenses saved and the profits reaped;" (2) "the revenues lost by the plaintiff;" (3) "the value of the copyright;" (4) "the deterrent effect on others besides the defendant;" (5) "whether the defendant's conduct was

innocent or willful;" (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;" and (7) "the potential for discouraging the defendant." *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir.1986).

Upon consideration of those factors with respect to the case at bar, I find that an inquest as to damages is warranted. First, there exist issues of fact as to the amount of profits defendants gained as a result of their infringing activities. In his deposition, defendant Wang admitted to purchasing products from "Mr. Chan" on two occasions; however, plaintiffs contend, and defendants dispute, that defendants purchased and sold additional quantities of the counterfeit product. For example, plaintiffs present the affidavit of Kevin Tay, a customer of Happy Dragon, to demonstrate that defendants sold hundreds of cases of the counterfeit six-pack to Tay from January 2005 to March 2005.[9] Because the first time Wang admits to purchasing products from Mr. Chan was in February 2005, plaintiffs assert, and defendants dispute, that Wang purchased products from Mr. Chan on other occasions. Plaintiffs assert that they do not have complete records of defendants' sales because defendants have not cooperated with discovery requests for those records,

---

[9] Defendants seek to file a sur-reply with respect to the present motion in order to respond to the allegations in Tay's affidavit. Because this matter is being referred for an inquest, defendants will have an opportunity to respond at that time.

another consideration under the factors set forth above.
Accordingly, an inquest on this issue is warranted.

Similarly, an inquest on the issue of plaintiffs' lost
revenues is warranted. Plaintiffs have failed to provide the
Court with evidence of lost profits. They contend that Mon
Chong's profits decreased during the time that defendants sold
the counterfeit product; however they do not provide any
evidence of their own losses. They also have failed to provide
the Court with evidence concerning the value of their mark.

The extent of defendants' "willfulness" is also at issue.
Although plaintiffs concede that they cannot demonstrate the
defendants actually knew that the products were counterfeit,
they maintain that they were "willfully blind" to the
counterfeit nature of the products and that willful blindness
constitutes knowledge for the purposes of this issue. *See, e.g.,
Tanning Research Laboratories, Inc. v. Worldwide Import & Export
Corp.*, 803 F.Supp. 606, 610 (E.D.N.Y.1992), *quoting Louis
Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir.1989)("[w]illful
blindness is knowledge itself"); *see also Gucci America, Inc. v.
Duty Free Apparel, Ltd.*, 315 F.Supp.2d 511, 521-522
(S.D.N.Y.2004); *Nike, Inc. v. Top Brand Co. Ltd.*, 2005 WL
1654859 (S.D.N.Y.2005); *Levi Strauss & Co. v. Diaz,* 778 F.Supp.
1206, 1208 (S.D.Fla.1991). Plaintiff argue that defendant Wang
was willfully blind to the counterfeit nature of the products in

that Mr. Chan arrived at Happy Dragon on announced visits, he refused to disclose the name of his company to Wang, he sold the six-pack, rather than the "5 + 1" pack, he demanded cash payments for the product, and he provided "generic" invoices for the product.

Wang, however, asserts that he compared the products sold to him by Mr. Chan with Amoy Foods soy sauce he had previously purchased and found them to be identical. Further, he states that the price he paid for the counterfeit cans was not significantly lower than the price he paid for the real cans. He further testified that he was aware that the six-pack was being sold in California, and he believed Mr. Chan to be from California. Finally, defendants argue that Wang did not perceive Mr. Chan to be a driver, to whom he would not normally give cash; rather, he thought he was a vendor. Because the extent of defendants' willfulness is in dispute, an inquest on this issue is also warranted.

Accordingly, this matter is referred to the Magistrate Judge to conduct an inquest and issue a Report and Recommendation on damages.[10]

---

[10] Defendants do not argue that plaintiffs are not entitled to damages in light of the factors set forth above. Instead, they argue that plaintiffs are not entitled to damages because their products did not have any marks indicating that they constituted registered trademarks and they cannot prove that defendants had actual knowledge of the trademark. See 15 U.S.C. § 1111 ("in any suit for infringement under this chapter by...a registrant failing to give...notice of registration, no profits and no damages shall be recovered under the provisions of this chapter unless the defendant had actual notice of the registration.) However, registration is not required for suits under

## Attorney Fees

Finally, plaintiffs move for attorney fees pursuant to sections 35(a)[11] and (b) of the Lanham Act. Pursuant to section

---

section 43(a) and for common law trademark infringement and unfair competition; therefore, plaintiff's failure to indicate on the products that they were registered trademarks is irrelevant with respect to those claims. *See Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F.Supp. 899, 911 (E.D.N.Y.1988) Moreover, damages for a section 32 violation may be recovered for the period after the defendant received notice of the registration, and here, defendants received notice, at the latest, when plaintiffs filed their complaint, yet they continued to sell the counterfeit products after that date. Accordingly, plaintiffs can recover profits for that time period. *Id.* (stating "[t]he holder of a mark is...under no legal obligation to give advance notice of its rights to an infringer before seeking damages....The only consequence of a holder failing to give such notice is that damages might start running later than if the notice had been given.") Defendants also argue, without citing any authority, that the GOLD LABEL SOY SAUCE mark was not registered until well after the alleged infringement occurred. However, if a trademark is eventually registered, then a plaintiff's right of priority over the mark vests at the time the application to register the mark was filed. *See* 15 U.S.C. § 1057(c) ("Contingent on the registration of a mark..., the filing of the application to register such mark shall constitute constructive use of the mark, conferring a right of priority, nationwide in effect, on or in connection with the goods or services specified in the registration"); *see also Talk To Me Products, Inc. v. Larami Corp.*, 804 F.Supp. 555, 559-560 (S.D.N.Y.1992); *First Nat'l. Bank of Omaha, Inc. v. Mastercard Intern. Inc.*, 2004 WL 1575396, *3 (S.D.N.Y.2004). It is not disputed that the GOLD LABEL SOY SAUCE mark was eventually registered and that plaintiffs applied for registration in advance of the incidents complained of. Accordingly, defendants' argument fails. And, as stated above, registration is not required for section 43(a) claims or for common law trademark infringement and unfair competition claims.

[11] Section 35(a) provides: "When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. **The court in exceptional cases may award reasonable attorney fees to**

35(a), attorney fees are only available in "exceptional circumstances," and pursuant to 35(b), attorney fees are available when a defendant "intentionally us[ed] a mark or designation, knowing such mark or designation [was] a counterfeit mark." 15 U.S.C. 1117(b). Deliberate and willful infringement can render a case "exceptional" and accordingly support an award of attorneys' fees under section 35(a). *See Quaker State Oil Ref. Corp. v. Kooltone, Inc.*, 649 F.2d 94, 95 (2d Cir.1981); *Springs Mills, Inc. v. Ultracashmere House Ltd.*, 724 F.2d 352, 357 (2d Cir.1983). Thus, whether to award attorney fees under both sections of the statute turns on the willfulness of the infringement.

As described above, the extent of defendants' willfulness is an issue to be determined after inquest. Accordingly, the motion for attorney fees should be considered by the Magistrate Judge and addressed in the Report and Recommendation.

## CONCLUSION

For the reasons set forth above, (1) plaintiffs' motion for partial summary judgment against defendants on Counts I, III, and IV alleged in the complaint is granted; (2) plaintiffs' motion for summary judgment on Count II is denied, and that claim is dismissed in its entirety; (3) plaintiffs' motion for a permanent injunction is granted; and (4) the matter is referred

---

**the prevailing party**." 15 U.S.C. 1117(a) (emphasis added).

to Magistrate Judge Mann to conduct an inquest and issue a

Report and Recommendation as to damages.

The Clerk is directed to transmit a copy of the within to

all parties and to the Magistrate Judge.

SO ORDERED.

Dated :  March 29, 2006
         Brooklyn, New York


                        By: /s/ Charles P. Sifton (electronically signed)
                            United States District Judge